The next case for argument this morning is 16-1928, District of Minnesota, James Thole et al. v. U.S. Bank, National Association, etc. et al. Ms. Yao, if you're ready, you may proceed. Good morning, may it please the Court. My name is Michelle Yao, representing Appellants James Thole and Sherry Smith. This case is about an employee retirement plan where the fiduciaries of the plan were prudently and in a diversified manner, and were obligated by statute to act with undivided loyalty to the retirees, or as ERISA refers to them, the participants of this plan. However, the fiduciaries of this plan violated those duties by putting 100% of the plan's assets in stock securities. In other words, the fiduciaries of the plan put all these retirement assets in one basket and worse, they put almost half the retirement assets in the defendant U.S. Bank Corp.'s own proprietary mutual funds, which violates ERISA's conflict of interest rules. Counsel, given that currently and for some time the fund has been overfunded, why is the case not moved as was determined below? So, I would say that the fund is currently overfunded, but the last contribution that actually caused the plan to be overfunded occurred in 2015, so it's not like it's been overfunded for five years. And it did not become overfunded until the district court found that participants had standing, had met their burden to show injury in fact, and then the defendants voluntarily acted to overfund the plan, and then it became overfunded throughout the course of the litigation. Why wouldn't that still moot the claim? Because the funding analysis, the question of whether a plan is, the requirement that a plan be underfunded under this court's jurisprudence in Harley is an injury in fact question, and the Supreme Court has repeatedly held on numerous times, I mean, the tenor, the entire decision of Laidlaw from the Supreme Court is for lower courts to conflate the doctrines of standing, Article III standing meaning the three-part requirement, injury in fact causation and addressability, with mootness questions or the doctrine of mootness, which is a wholly different standard, is reversible error, and has reversed lower courts numerous times on that basis. And so why in this case, what makes this not moot even though it is now overfunded? So what redressability remains? Because there is significant relief that would redress the injury that plaintiffs had, have undisputedly suffered and the district court found. And what's the relief? And so they're, essentially they fall into three buckets. The first is the losses caused to the plan. Because there's been, this case was dismissed essentially before there's been any discovery about the losses, there's been no quantification of the losses caused by the fiduciary breach. Second, there's incredibly important injunctive relief that's necessary given a situation here where many of the fiduciaries that initially gambled with these retirement assets are still in place. And so there's nothing preventing them. There's been no court order or anything that's binding that would prevent the defendants from gambling again with the retirement assets. Moreover, the defendants- But the 100% equity strategy has basically been abandoned for several years, hasn't it? Since what, 2010 or something like that? The specific allocation of 100% equities is no longer in place, but the fiduciary breach was taking too much risk with this plan's assets. And so the fact that one particular form of the imprudence and disloyalty doesn't exist does not mean that it cannot take another form. And moreover, the- Wait, you want an injunction that says they must be prudent? An injunction, I mean, the types of injunctions we're talking about are very specific. Removal of any fiduciaries that were in place at the time that this overly risky strategy was taken. The appointment of an independent fiduciary. And I want to implore the court to- Well, that is also in our prayer for relief. We have more general injunctions to try to root out the behavior in the first place, but specifically, we also ask for an injunction on the 100% to diversify the plan's assets. But I want to be clear that the standard for mootness is an extremely heavy burden. If you look at all the Supreme Court's precedents about when the court has found that the defendant or the party asserting mootness has met its burden, it is an extremely stringent standard. It is not one that's based on the pleadings. It's one essentially where there is something legally binding that prevents the party who's been accused of allegedly improper actions from repeating that. And so, for example, in Laidlaw, the plant where the omissions were occurring was closed down. And the court found that's not enough. The court still remanded to the district court to find, is it absolutely clear that it is impossible, it is essentially unreasonable, is it absolutely clear that the alleged wrongful behavior will not recur? And so, the fact that in our pleadings, we referenced the fact that the 100% equity strategy is not in place. That is not anything that's legally binding or anywhere close to what the Supreme Court has held. Is sufficient to meet the defendant's burden of showing that it's absolutely clear that this will not recur. But this doesn't seem like the kind of capable of repetition, yet evading review incident where you have to allow parties to pursue their remedies because this could happen again and happen again and each time become moot. This is something that's basically been addressed for a number of years and apparently decisions made that make it unlikely, much less likely for this to actually happen again. Well, to answer your question, I will point out that there are other, the 100% equity strategy was part of our claims. But the other major aspect of our claims was the investment in affiliated funds. And while the district court addressed this in a footnote, the public filings make clear that the plan still holds an affiliated fund investment. The plan, because it's regulated by the Department of Labor, has to file very specific schedules. And the public filings that are available to anyone in this court, and it's in the district court record, we can provide you sites. Make clear that one of the affiliated fund investments is still in the plan. And it's got a little asterisk by it that says it's a party and interest transaction, which is a violation of ERISA 406. I know that, I mean, as you've read from the defendant's briefing, they believe they're entitled to an affirmative defense, an exemption. But there are four elements of that affirmative defense. We were in discovery precisely on that question, among others. And there's been no discovery on that issue, and so they have not met their affirmative defense. And they essentially keep their toe in the water. So the idea that this is, that all forms of relief that we've sought have been provided is just counterfactual. Your first bucket of relief was, could you repeat that again? Yeah, sorry, losses, and then injunctive. Is that, yeah, so let's stop at the loss. Harley, the case out of our court, said that so long as the plan is overfunded, the individual participants don't have, even if there's harm to the plan, they don't have any interest in that because this is a defined benefit plan. So they're just getting their defined benefit. How does that, how does Harley play into what you're asking for in your first bucket of relief that you're saying makes this not moot? Right, so as your honors know, Harley was decided on statutory grounds. So even though there is this constitutional avoidance sort of principle informing the decision, it was decided on what does the statute say, subsection 1132A2 of ERISA, which provides a participant the ability to get relief for the plan, essentially. And the fact, so essentially what Harley held was, you need to read into appropriate relief that the plaintiff must show that the plan is underfunded. To then essentially, so what this court would be required to do to say that the plan must be underfunded throughout the litigation, would be to essentially take the actual expressed language in ERISA 1132A2, which refers to 1109, referring to appropriate relief losses that a participant can restore losses to the plan. And X out that expressed language. That I think goes too far. Because this- Which expressed language? In 1109, it refers to, so 1132A2 says that a civil action may be brought by the secretary, a participant, or beneficiary, or fiduciary for appropriate relief under 1109 of this title. And 1109 makes a fiduciary personally liable for losses, and then goes on to refer to other equitable or remedial relief. So losses is expressly in 1109, so to- But Harley already said that, I think you just said, Harley already concluded that when the plan is overfunded, there's no appropriate relief available. Yes, for standing purposes to show injury in fact at the commencement of the litigation. So- But since it's not an Article III matter, why wouldn't that rule apply throughout the litigation? Unlike Article III, which raises voluntary cessation issues and so forth. Well essentially, I mean the interplay- The interplay of what Harley held, which was expressly a statutory construction issue, and the mootness doctrine, essentially becomes one where, as your honors know, a plaintiff must have statutory standing and constitutional standing. And the mootness principles, I think, inform sort of both. Generally, the case is that- That's my question, why? I understand your point on mootness with respect to Article III, but if you now say Harley is a statutory case, why does mootness have anything to do with it? You just don't have a cause of action if the plan is overfunded, whether that happens at the beginning or in the middle. Because I think it would be too far, and especially because what Harley says is that it's constructing the words, and I mean McCullough, this court, essentially says, even though Harley doesn't expressly talk about the words it's interpreting, it's talking about appropriate relief. And it's saying that it's inappropriate to provide the relief if the plan is overfunded at the commencement of the litigation, is essentially what Harley says. Then to take a step further and say, and actually the only relief you can have under Harley, under essentially extending Harley, is essentially to get the plan to a 100% funded state. Then requires literally crossing out all the other languages that it's in 1109 that isn't in direct conflict with the original Harley-Holding. The original Harley-Holding was construing appropriate relief, but it didn't actually limit the relief to, in a way that was contradictory to the precise language of the statute. Because I don't think this court would have gone that far, because it obviously violates statutory construction principles, to literally come to a conclusion about what 1132A2 and 1109 say that is in direct contravention of the expressed text. I mean, that just violates a core statutory construction principle. Council, you've- Goodness. All right, thank you. I'll reserve the rest for rebuttal. Mr. Luck? May it please the court, Steve Lucky on behalf of the US Bank Defendants. The district court was correct, we believe, in holding that there was no Article III jurisdiction for this case to continue, because the plaintiffs have not lost one penny of their $2,242 a month benefit. They've incurred no restrictions on their benefits. They're participants in an actuarially overfunded plan that has been actuarially overfunded since nearly the beginning of this lawsuit, 2014. And there's no evidence in this Rule 12B1 record of any risk to their benefits. And I think there's no really meaningful dispute between the plaintiff's amici that if this plan had been overfunded three months earlier in September 2013 when this case has commenced. Then under Harley and McCullough, it would have been dismissed for lack of subject matter jurisdiction. What about the alternative types of relief? You focus on the overfunding, but what about the injunction? What about disgorgement? What about those other types of relief? Is it moot as to those? Yes, it is, Judge Kelly. And first of all, the court in McCullough did say that the holding in Harley as it pertained to damages would also pertain to injunctive relief, and that makes sense. Because the participants in the plan, Tholen and Smith in this case, what they're entitled to is their set benefit under the plan. And any recovery, whether it be through injunctive relief, whether it be through disgorgement, whether it be through damages that would go to the plan, or that would affect the plan if the plan is actuarially overfunded. And their benefit is there, and they have no right to the surplus, then they are not affected. And so they lack the concrete injury for Article III standing, and that would be true whether or not the. And so McCullough says that they cite the Perlman case in the Third Circuit as allowing injunctive relief. That must just be a miscite. And also, there's nothing, they don't have any interest in that. What about the interest in making sure it doesn't happen again, the practice of investment irresponsibility? If that's a problem, couldn't they get some relief that helps avoid that occurring again? They couldn't under McCullough, and I also want to correct the factual statement on that, that there is no issue in this case, as Judge Erickson found, about whether any of the conduct that was alleged in the complaint, which was the 100% equity strategy and the use of affiliated mutual funds. The fund that Ms. Yao refers to that is still in the plan is a money market fund. The rest of the company was sold off. FAF is not part of US Bank and hasn't been since 2010. And so that's another reason why this, one of the things you can't get, and the already versus Nike case says that whether it's under mootness or in the first place, and the IUB case by this court said the same thing. You can't, in other words, they can't get, if we're not in the plan, if we don't have affiliated funds, we don't have a mutual fund affiliate, and the bank hasn't been invested in 100% equities, there would be no claim for injunctive relief in the first instance. Because it's too speculative, the fact that it could occur in the future. I think the plaintiff is trying to put a higher burden on us by saying that this is a voluntary cessation case. Under the mootness doctrine, that there is a very great burden on us that we practically have to swear on a piece of paper that this will never happen again, and I would suggest that that is not the correct standard. Under the mootness doctrine, it's often referred to as a standing set in a time frame. In other words, the personal injury that you would have to assert at the beginning would have to continue throughout. And an exception to that is the voluntary cessation doctrine. But for that to happen, you need a voluntary cessation of the challenged conduct as a result of the litigation. Here, the challenge conduct, the 100% equity strategy and the affiliated funds was not ceased as a result of litigation. It wasn't in place for three years before the litigation. And what mooted the case is not the cessation of the challenge conduct, but the overfunding, the actuarial overfunding. Which incidentally, the plaintiff say it happened as a result of this. Judge Erickson found as a factual matter that that was not true and there was no basis for that. And so the burden shifting that they try to impose on us does not apply. But even if it did, again, Judge Erickson found as a factual matter that we had met that burden. Because the claim of improper conduct is, as we said, all abandoned by 2010, long before the case, including their reference to the money market funds, that was not part of the case. And by the way, there's no problem, there's no disgrace in having an affiliated fund. There's departmental labor exemptions that allow the affiliated money market fund. It is in the nature of an affirmative defense, but it wasn't part of this case. And so the fact that that's gone, that the equity strategy, where the allegation was the purpose for the equity strategy was to prop up the affiliate, that is now gone, is the court considered that it couldn't be reasonably expected to recur. And that the plaintiffs can't rely on theories, and again, this court's decisions in Iubi and McCarthy versus Ozark, which are referenced in the district court's opinion, all say that that is not sufficient for that to occur. And so, Judge Kelly, I also want to make sure that I've answered your question about the different forms of relief. But it doesn't really matter if it's stopped and also if the plan is overfunded, whether it's injunctive relief or other. Is there anything? So, you've cited McCullough to say that injunctive relief has also been precluded. But there was an out in McCullough for the 1132A3. I mean, are you saying that that's off the table as well, simply because it's overfunded? Yes, Your Honor, and there's no reason really to distinguish between the two. The A3 claim wasn't brought in McCullough. I would, but I would refer the court, and we mentioned it in our rule 28J letter. The Sixth Circuit's decision in Sendlin versus Fleet Owners 844F3, 576. Where the court quite clearly says, you need an injury, in fact, for an A3 claim. Just like you do for an A2 claim, and it does apply that to the injunctive relief. So, are there still the folks who were making the decisions on the 100% equity? Are those folks still making those decisions? It would- I don't think there's anything specifically in the record, but I believe that at least some are and some aren't. It's a- So, would it be the secretary that would have to bring an action if, in fact, that was something of significant concern? How would that ever be remedied? If there were a significant concern about plan management in an overfunded plan, I would refer the court to Harley's commentary on that. That it could be the secretary or regulators, it also mentions the plan sponsor. It also mentions co-fiduciaries or possibilities. In other words, there would be people that would have an interest. But the participants in this case, because they've gotten everything that they're entitled to and there's no reason to believe that they won't, that they can't get involved in the management of the plan. That really encroaches on what Spokio addressed, which is that you cannot bring a claim that the statute be followed. That we be entitled to our personal statutory right. And before I talk about that, I also want to make sure that the court knows that in all of the cases that the plaintiff's site, Horvath, Pender, Lee, Edmondson, in which an A3, an injunction was allowed in an A3 claim, you can find some personal continuing stake that they had in it. Even if it was a DB defined benefit plan, they had some right to an amount depending on how the plan did. Or they had a right to information. You will find that in every one of those cases. And the only cases where you won't, and where there's no continuing interest under the Sixth Circuit's decision in Senlin, and also under McCullough, there would not be injunctive relief that would be available. And that would be true under 502A3, as well as the other. Because what you would be saying then is, we want to have a right to good plan management. And in fact, that is something that's really the second ground for the plaintiff's argument that if Harley and McCullough bar this claim under their own terms, and the claim is moot, that maybe they don't survive Spokio. But the Fifth Circuit, in the Punt case, said that almost exactly the same claim was made. And in fact, in that case, it was an underfunded plan, but that's a different issue. The court said, you don't have that right under Spokio to proper plan management, because that would vitiate Spokio's explicit pronouncement that Article III standing requires a concrete injury, even in the context of a statutory violation. And this- Are you arguing, you seem to be arguing this as an Article III case, as I hear you. Do you disagree with your counterpart that Harley and McCullough were statutory cases? I would, Harley was by its own terms based on prudential standing. You mean statutory? Yeah, but yes, statutory standing. And your Honor's decision in McCullough, as I read it, definitely addressed that and recognized that, but also provided, indicated in its discussion of Sprint, that there might be an Article III basis for it as well. That's how it was viewed both ways in the subsequent Harley decision in Zesch. All the circuit courts that have looked at this have viewed Harley as an Article III case, and that's how we presented it below, as an Article III case. We did argue in our brief that to the extent Spokio would somehow be viewed as altering Article III, that let's not forget that these prudential standing principles of Harley and McCullough remain and would still be an independent basis for affirmance. But I think that a lot of this has converged on Article III standing. And so that is what we argued before, but we would say that all of the arguments for why this is a bad idea and why it would not be appropriate relief under 409 and 502A2 remain. I mean, you basically have two people who are entitled, let's say, to obtain $4,200 or $20 a month, or $2,242 a month, that have no risk to their benefits. That are asking this court to decide, for example, about investment strategy, that would be a per se violation without regard to different things. That those are the types of issues that not only do they perhaps discourage planned sponsorship, but they're also best left to the political branches where there's generalized grievances that would have a broader impact, it does not affect them. But under Article III or under prudential standing, we believe that that is correct. I would also just draw the court's attention, and I think it's certainly in the record and we mentioned it in a 28-J letter to the Breitberg case, that again, address this issue of if the participant isn't affected or if the person isn't affected, do they have a right to sue on a violation of a statutory right absent any concrete risk of loss. Or excuse me, concrete injury or particularized injury. And this court said no, and also mentioned that this is subject to Rule 8 as well. And when we look at the pleadings in this case, and this is discussed as well, the risk, not only as a factual matter, but as a pleading matter, is woefully insufficient. Paragraph 167 of the complaint has almost a throwaway line. This increased the risk of loss. The underfunding in 2008 increased the risk of loss to the plan, and that's insufficient. And so, your honors, I would request that the decision dismissing the case for lack of standing be affirmed in all respects. And otherwise, we rely on the briefs, unless the court has any further questions. I see none. Thank you, your honor. Thank you, counsel. Ms. Yeo? Very briefly, so on the factual issue about the affiliated funds, our complaint clearly challenges affiliated funds across the board. The limitation to mutual funds was a planned document claim. The planned investment policy said, you can't invest in affiliated funds unless they're money market funds. And so, when the district court dispensed of this in a footnote, she referred to paragraph 139 of the complaint, which is not the paragraph that we're talking about. Affiliated funds broadly are a violation of ERISA's conflict of interest rules. And as Mr. Luckey recognized, it's their burden as an affirmative defense to meet the elements. On the A2, A3 distinction, it is absolutely critical to recognize the difference. As the Supreme Court said in verity, A2 relief is brought on behalf of the plan by a participant to protect the plan. A3 relief is brought by an individual in their personal capacity. Here, the plaintiffs have been injured. That was the point of Harley. They were injured in a personal way when the plan became underfunded due to fiduciary breach. And so they are entitled to seek injunctive relief under A3, and this court has never answered the A3 question. And so that's one of first impression where three of the four circuits that have answered the A3 question with respect to injunctive relief have found that a violation of ERISA is enough when bringing a claim in one's personal capacity. Thank you. Court wishes to thank both counsel for your argument that you've provided to the court this morning. We'll take your case on advisement, render decision in due course. Thank you.